ORAL ARGUMENT NOT YET SCHEDULED

**No. 24-7021**

# In the United States Court of Appeals for the District of Columbia Circuit

———————

RUBY FREEMAN AND WANDREA' MOSS,

*Plaintiffs-Appellees*,

*v.*

RUDOLPH W. GIULIANI,

*Defendant-Appellant.*

———————

On Appeal from the United States District Court for the District of Columbia
Case No. 21-cv-3354 (The Honorable Beryl A. Howell)

———————

**INITIAL BRIEF FOR PLAINTIFFS-APPELLEES**

———————

John Langford
Rachel Goodman
UNITED TO PROTECT DEMOCRACY
82 Nassau Street
New York, NY 10038
(202) 579-4582
rachel.goodman@protectdemocracy.org

Von DuBose
DUBOSE MILLER LLC
75 14th Street NE. Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl Conant Governski
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhoughton-larsen@willkie.com

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A.    **Parties and Amici.** References to all parties, intervenors, and amici appearing before the district court and in this court appear in the Brief for Defendant-Appellant.

B.    **Rulings Under Review.** Except for the following, references to the rulings at issue appear in the Brief for Defendant-Appellant:

> Order; **Dkt.102** (ordering adverse inferences as a sanction for discovery misconduct) (Howell, J.); *Freeman v. Giuliani*, No. 21-cv-3354 (BAH), 2023 WL 8360653, at *2 (D.D.C. Oct. 13, 2023).

C.    **Related Cases.** References to all related cases as defined by Local Rule 28(a)(1) appear in the Brief for Defendant-Appellant.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

TABLE OF CONTENTS........................................................................ ii

TABLE OF AUTHORITIES ................................................................ iv

INTRODUCTION ...............................................................................1

STATEMENT OF THE CASE ..............................................................4

    A.  Giuliani Orchestrates a Campaign to Harass and Defame
        Plaintiffs. ...............................................................................4

    B.  Giuliani's Conduct Devastates Plaintiffs' Lives. ..................8

    C.  The District Court Denies Giuliani's Motion to Dismiss ..................10

    D.  Giuliani Disobeys Discovery Orders and Fails to Preserve
        Evidence Essential to Plaintiffs' Claims. .............................11

    E.  Giuliani Stipulates to Liability for Plaintiffs' Claims. ........................12

    F.  The District Court Enters a Default Judgment Sanction.....................13

    G.  The Damages Trial. ...............................................................15

    H.  The Jury Awards Compensatory and Punitive Damages.....................17

    I.  The District Court Denies Giuliani's Post-Judgment
       Motions.................................................................................18

SUMMARY OF ARGUMENT ..............................................................19

ARGUMENT .......................................................................................23

I.   All But One of Giuliani's Thirteen-Plus Appellate Arguments
    Were Never Raised Below, and Are Accordingly Waived or
    Forfeited.......................................................................................23

II.  The Complaint and Default Judgment Established Giuliani's
    Liability on All Claims. .................................................................26

    A.   Giuliani's Sole Preserved Argument—that the District Court Improperly Permitted a Double Recovery for Defamation and IIED—Is Meritless. ..................................27

    B.   Giuliani's Actual Malice Argument Is Waived, and Meritless. ...................................................................30

    C.   Giuliani's Challenge to the Allegations of Civil Conspiracy Is Waived and Meritless....................................41

    D.   The Complaint Sufficiently Alleged IIED, and Giuliani's New Arguments to the Contrary Are Waived or Forfeited. ....................................................................43

III.  There Is No "Heightened Foreseeability" Requirement Here, and Giuliani's Novel Argument to the Contrary Is Waived.........................46

IV.  The Court's Jury Instructions Regarding "Matters Already Decided" Were Appropriate, Jointly Agreed to, and Harmless. ..................49

V.   The District Court Correctly Held that Plaintiffs Were Entitled to Seek Punitive Damages. ..............................................52

VI.  The Damages Awards Were Lawful, Proportionate, and Amply Supported by the Evidence. ....................................................54

    A.   Giuliani's Challenges to the Damages Awards Are Barred by His Failure to Present them to the District Court..........................54

    B.   The Compensatory Damages Were Not Excessive...........................57

    C.   The Punitive Damages Award Was Lawful, Proportionate, and Supported By the Evidence. .........................................58

CONCLUSION ..................................................................64

CERTIFICATE OF COMPLIANCE ........................................................65

# TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Amobi v. D.C. Dep't of Corr.*,
755 F.3d 980 (D.C. Cir. 2014) .................................................................44, 45

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996) ........................................................................................61

*Bose Corp. v. Consumers Union of U.S., Inc.*,
466 U.S. 485 (1984) ..................................................................................31, 36

*Bourjaily v. United States*,
483 U.S. 171 (1987) ........................................................................................51

*Butera v. District of Columbia*,
235 F.3d 637 (D.C. Cir. 2001) .......................................................................46

*Cannon v. Peck*,
36 F.4th 547 (4th Cir. 2022) ...........................................................................31

*Chandler v. Berlin*,
998 F.3d 965 (D.C. Cir. 2021) .......................................................................43

*Cone v. W. Va. Pulp & Paper Co.*,
330 U.S. 212 (1947) ........................................................................................54

*Couch v. Verizon Commc'ns, Inc.*,
105 F.4th 425 (D.C. Cir. 2024) ...........................................................28, 32, 43

*Dellums v. Powell*,
566 F.2d 231 (D.C. Cir. 1977) .......................................................................46

*Dennis v. Sparks*,
449 U.S. 24 (1980) ..........................................................................................42

*District of Columbia v. Air Fla., Inc.*,
750 F.2d 1077 (D.C. Cir. 1984) .....................................................................23

*Finkel v. Romanowicz*,
577 F.3d 79 (2d Cir. 2009) .............................................................................27

*Freyberg v. DCO 2400 14th Street, LLC*,
    304 A.3d 971 (D.C. 2023) ...................................................46, 47

*Gordon v. Rice*,
    261 A.3d 224 (D.C. 2021) ........................................................63

*Ho v. Garland*,
    106 F.4th 47 (D.C. Cir. 2024)...................................................37

*Honda Motor Co. v. Oberg*,
    512 U.S. 415 (1994).................................................................59

*Hustler Mag., Inc. v. Falwell*,
    485 U.S. 46 (1988).........................................................43, 45, 62

*Jankovic v. Int'l Crisis Grp.*,
    822 F.3d 576 (D.C. Cir. 2016)............................................39, 40

*Jonathan Woodner Co. v. Breeden*,
    665 A.2d 929 (D.C. 1995) ........................................................59

*Keepseagle v. Perdue*,
    856 F.3d 1039 (D.C. Cir. 2017)...............................23, 24, 25, 31, 55

*Langevine v. District of Columbia*,
    106 F.3d 1018 (D.C. Cir. 1997).................................................57

*Lesesne v. Doe*,
    712 F.3d 584 (D.C. Cir. 2013)..................................................56

*Lohrenz v. Donnelly*,
    350 F.3d 1272 (D.C. Cir. 2003).................................................39

*Maalouf v. Islamic Republic of Iran*,
    923 F.3d 1095 (D.C. Cir. 2019).................................................25

*Masson v. New Yorker Mag., Inc.*,
    501 U.S. 496 (1991).................................................................37

*McFarlane v. Esquire Mag.*,
    74 F.3d 1296 (D.C. Cir. 1996)............................................40, 41

*McKissick v. Yuen,*
    618 F.3d 1177 (10th Cir. 2010) ........................................................24

*Mittleman v. United States,*
    104 F.3d 410 (D.C. Cir. 1997)..........................................................28

*Moldea v. N.Y. Times Co.,*
    15 F.3d 1137 (D.C. Cir. 1994)..........................................................28

*Moldea v. N.Y. Times Co.,*
    22 F.3d 310 (D.C. Cir. 1994)............................................................36

*Newmyer v. Sidwell Friends Sch.,*
    128 A.3d 1023 (D.C. 2015) ..............................................................45

*Owens v. Republic of Sudan,*
    864 F.3d 751 (D.C. Cir. 2017)..........................................................55

*Perry Cap. LLC v. Mnuchin,*
    864 F.3d 591 (D.C. Cir. 2017)..........................................................60

*Philadelphia Newspapers, Inc. v. Hepps,*
    475 U.S. 767 (1986)..........................................................................41

*Pitt v. District of Columbia,*
    491 F.3d 494 (D.C. Cir. 2007)....................................................45, 53

*Radtke v. Lifecare Mgmt. Partners,*
    795 F.3d 159 (D.C. Cir. 2015)..........................................................30

*Republic Tobacco Co. v. N. Atl. Trading Co.,*
    381 F.3d 717 (7th Cir. 2004) ...........................................................31

*Ryen v. Owens,*
    446 F.2d 1333 (D.C. Cir. 1971)........................................................54

*Salazar ex rel. Salazar v. District of Columbia,*
    602 F.3d 431 (D.C. Cir. 2010)..........................................................48

*Snyder v. Phelps,*
    562 U.S. 443 (2011)..........................................................................62

*St. Amant v. Thompson*,
390 U.S. 727 (1968)...................................................................39

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003)..............................................................60, 61

*Time, Inc. v. Pape*,
401 U.S. 279 (1971)...................................................................37

*United States v. Benton*,
98 F.4th 1119 (D.C. Cir. 2024)..................................................49

*United States v. Celis*,
608 F.3d 818 (D.C. Cir. 2010)...................................................51

*United States v. Olejiya*,
754 F.3d 986 (D.C. Cir. 2014)........................................23, 24, 30

*United States v. Seigel*,
168 F.2d 143 (D.C. Cir. 1948)...................................................26

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
546 U.S. 394 (2006)............................................................24, 54

*Willoughby v. Potomac Elec. Power Co.*,
100 F.3d 999 (D.C. Cir. 1996)...................................................41

*Xereas v. Heiss*,
987 F.3d 1124 (D.C. Cir. 2021)..................................................48

**Other Authorities**

Fed. R. Civ. P. 37(c)(1)(B) .........................................................50

Fed. R. Evid. 605 ......................................................................49

12 Moore's Federal Practice - Civil § 59.55 (2024)..................54

Restatement (Second) of Torts § 652E (Oct. 2024 update)....28

Restatement (Second) of Torts § 880 (1979)...........................42

27 Wright & Miller, Federal Practice & Procedure § 6063 (2d ed.) ................49, 50

## INTRODUCTION

This appeal involves egregious acts of defamation and intentional infliction of emotional distress ("IIED") by Appellant Rudolph W. Giuliani ("Giuliani"), against Plaintiffs-Appellees Ruby Freeman and her daughter, Wandrea' ArShaye Moss ("Plaintiffs"). Plaintiffs served as election workers in Fulton County, Georgia during the 2020 election. Giuliani targeted Plaintiffs with a campaign of defamatory lies asserting that Plaintiffs had engaged in election fraud, devastating the reputations of two private figures, and thrusting them involuntarily into the national limelight for crimes they did not commit. Giuliani's efforts subjected Plaintiffs to unrelenting harassment, drove them from their homes and livelihoods, and deprived them of any sense of safety or security for themselves and their family.

Plaintiffs brought this civil action to recover for their injuries. Other defendants settled, but Giuliani (alone) decided to litigate, for a while. At first, he moved to dismiss, but when he lost that motion, Giuliani attempted to opt out of discovery. As the District Court found—and *as Giuliani has not contested on appeal*—he willfully caused the loss of the vast majority of evidence "relevant to all of [P]laintiffs' claims," and "significantly prejudiced" Plaintiffs' ability to prove their claims. Giuliani willfully disobeyed repeated court orders attempting to compel his compliance with rudimentary discovery obligations, and as the District Court found, his "willful shirking of his discovery obligations in anticipation of and during

this litigation" "thwarted" Plaintiffs' "rights to obtain any meaningful discovery in this case." In other words, rather than litigating, Giuliani tried to subvert the very process of civil litigation. And he did this despite his admission, in open court, that as someone who had been in the law "for 50 years; I understand the obligations." Ultimately, after lesser sanctions failed to bring Giuliani into compliance, and following Giuliani's own attempts to stipulate to liability, the District Court entered a default judgment sanction as to Giuliani's liability for Plaintiffs' claims, which (as is undisputed) had the effect of deeming the Complaint's allegations admitted for purposes of this case. Even after that order, Giuliani continued to willfully disobey discovery orders relating to Plaintiffs' damages case, which resulted in additional sanctions in the form of adverse-inference instructions at trial.

After hearing four days of evidence, the jury returned a unanimous verdict awarding Plaintiffs compensatory damages for defamation and IIED, respectively, and a roughly equivalent amount in punitive damages. Giuliani filed, and the District Court denied, post-verdict motions *in which he did not challenge any aspect of the damages awards*.

Strikingly, in this appeal, Giuliani does not challenge the District Court's imposition of a default judgment sanction, any of the District Court's other sanctions orders, or any of the District Court's factual findings underpinning those orders. All

of the facts relating to Giuliani's intentional discovery abuses are therefore established—unchallenged—for purposes of this appeal.

Instead, Giuliani's opening brief unleashes approximately thirteen new issues for appeal, *only one of which* was raised below. All but that one issue are waived, forfeited, or—like Giuliani's challenges to the size of the verdict—beyond the Court's power to review in the absence of a post-verdict motion raising the issue below. And with one exception, Giuliani has not even bothered to argue why his waivers and forfeitures should be overlooked. Thus, while Plaintiffs have endeavored to respond to each of Giuliani's new arguments on their merits, they should not have to. And neither this Court, in this appeal—nor future courts, in future appeals—should have to sift through the record to assemble the pieces of a dozen untimely arguments raised by a sophisticated litigant who could have fought this case on its merits below but instead made an intentional, informed decision to opt out of discovery.

To be clear—and as explained below—Giuliani's arguments on appeal have no merit. But this case calls out for a simpler resolution: this Court should strictly enforce its waiver and forfeiture rules, reject Giuliani's sole preserved challenge (to a supposed duplicative recovery that did not occur), and affirm without fanfare.

## STATEMENT OF THE CASE

### A.    Giuliani Orchestrates a Campaign to Harass and Defame Plaintiffs.

Ruby Freeman and her daughter, Shaye Moss, served as election workers in the 2020 federal election in Fulton County, Georgia. **Day2AMTr.at.25:24–26:6; Day3PMTr.at.105:25–106:2.** Ms. Moss had been working full-time for the Department of Registration and Elections in Fulton County for years, starting in the mailroom and ultimately serving as an interim elections supervisor in 2020. **Day2AMTr.26:7–13,31:13–19.** During the 2020 elections, Ms. Freeman signed up to serve as a temporary worker to support her daughter and Georgia's democratic process. **Day3PMTr.105:17–106:21.**

Both women arrived at the State Farm Arena in Fulton County on November 3, 2020 before the sun came up and worked until after midnight. **Day2AMTr.32:12– 17; Day3PMTr.108:3–13; Day2PMTr.23:12–14.** Within a few days, news outlets projected Joseph Biden the winner of the 2020 presidential election in Georgia. **Dkt.22.¶33.** On November 11, 2020, Georgia Secretary of State Brad Raffensperger ordered a hand recount of every ballot in the state, and he joined Georgia Governor Brian Kemp in certifying the Georgia election for President Biden on November 20, 2020. **Dkt.22.¶¶34-35.**

Giuliani convened a team to undermine the legitimacy of the election, including by telling lies about Plaintiffs. **Dkt.112-2,at.93:16–25;** *see also* **Dkt.63-**

**5.** As alleged in the operative Amended Complaint ("Complaint"), Giuliani published and caused to be published false statements accusing Plaintiffs of criminally and/or fraudulently introducing 'suitcases' of illegal ballots into the ballot-counting process, criminally and/or fraudulently counting the same ballots multiple times in order to swing the results of the election, and surreptitiously passing around flash drives that were supposedly to be used to alter votes in Dominion voting machines, and also falsely accusing Ms. Freeman of having a criminal record. **Dkt.22,at.¶4;** *see id.,*at.¶¶**57–101,166.**

Giuliani and his co-conspirators memorialized their plan in a "Strategic Communication Plan" detailing "Voter Fraud Highlights For 2020 US Election" in certain battleground states. **Dkt.63-5,at.4–24 ("Strategic Plan").** It identified Ms. Freeman and Ms. Moss **by name** and described surveillance video that showed them counting votes at the State Farm Arena (the "State Farm Video") as evidence of a crime, including by stating:

- Video of Ruby and Shay [*sic*] at midnight
- That is the time of the 200,000 vote bump
  . . .
- Election Official Ruby Freeman is seen surreptitiously & illegally handing off hard-drives ON CAMERA in the Georgia counting facility *Id.,*at.6;
- 'Suitcase Gate'- Video of 'ballot stuffing' when 'suitcases' (container type) filled with ballots (approximately 6,000 in each container) were rolled out from under table at GA arena and placed in tabulation machines (one batch repeatedly tabulated at least 3 times) by [X number] of poll workers who remained AFTER all Poll Watchers (GOP and the like), press and all third parties were required to leave the

premises per announcement at or about [___ AM] until [___ AM] in violation of election laws enacted by GA state legislature. Ruby Freeman (woman in purple shirt on video), now under arrest and providing evidence against GA SOS Stacey Abrams and DNC on advanced coordinated effort to commit voter / election fraud [need confirmation of arrest and evidence]. *Id.***,at.22.**

Although Giuliani and his co-conspirators' conduct included numerous other statements, liability for defamation was ultimately predicated on statements Giuliani made in the Strategic Plan and across eight broadcasts from December 23, 2020 through December 11, 2021, and three statements made by co-conspirators. **Dkt.22,at.¶¶57-101; Dkt.115,at.12-18.** They included Giuliani stating that:

- the State Farm Video of Plaintiffs showed "what is obviously, without any doubt, the theft of votes," that "Ruby Freeman . . . has a history of voter fraud participation," that Plaintiffs counted votes "more than one time," and that it "looks like a bank heist." *Id.***,at.¶66.**

- the Video showed "Democrats steal[ing] the election! And there you see it. Ruby Freeman and her crew getting everybody out of the center. . . . And all of a sudden the crooks sprang into action. They go under a desk covered like a casket, and they start pulling ballots out" and counting them in a way that "takes Biden and multiplies it by 5." *Id.***,at.¶69.**

- hat the supposed fraud in "Georgia is maybe the easiest to demonstrate because it's on video. During that videotape, that we can all see right in front of our eyes, we can see them stealing the votes. We can see them throwing out the people. We can see them counting it four and five times." *Id.***,at.¶71.**

- "the Fulton County vote counting [videotape], which in and of itself proves that Georgia was stolen by, uh, Joe Biden and by the Democrats. That one video proves it." *Id.***,at.¶74.**

These statements continued for months, long after the campaign, and long after President Biden's inauguration:

- "They committed the crimes on video. You can see them do it." *Id.*,**at.¶90.** (June 14, 2021).

- "How about the videotape that I have where they're shoving the thing into the machine three and four times so they can be recounted by the same two women that earlier in the day were passing around hard drives or flash drives[.]" *Id.*,**at.¶94.** (July 23, 2021).

- "The situation in Georgia, uh, that videotape is about as clear evidence of stealing votes as I've ever seen." *Id.*,**at.¶96.** (December 10, 2021).

On December 4, 2020, long before any of those actionable defamatory statements was published, law enforcement and Republican officials in Georgia conveyed that they had immediately investigated the claims and found them to be wholly unsupported by any evidence. Officials repeatedly refuted Giuliani's statements in public, including in a tweet in which Gabriel Sterling, Georgia Secretary of State's Chief Operating Officer, publicly confirmed via Twitter that the "90 second video of election workers at State Farm area, purporting to show fraud, was watched in its entirety (hours) by @GASecofState investigators" and shows "normal ballot processing." **Dkt.22.¶¶41-42.**

Giuliani knew or recklessly disregarded the truth that all of his claims about Plaintiffs were false. **Dkt.22,at.¶¶52–53,104–105,165–69,180.** By December 7, 2020, (*i.e.*, before *any* of the defamatory statements on which liability was predicated below), Giuliani was "specifically aware" of evidence refuting his lies.

7

*Id.*,at.¶¶102–33. The refutations and evidence cited in the Complaint also included but were not limited to the following:

- A sworn affidavit from Frances Watson, chief investigator for the Georgia Secretary of State, confirming that her "investigation found that (i) observers and members of the press were *not* told to leave, but exited the room after seeing a group of workers responsible for opening envelopes leave; and (ii) no ballots were brought in from an unknown location and hidden under a table." *Id.*,at.¶47;

- Communications from Gabriel Sterling that "we've had our investigators watch all many several hours" of the State Farm Arena Video and that it shows election works "doing their regular processes"; and confirming during a press conference that the State Farm Arena Video "showed that the containers taken from under a table held valid, uncounted ballots" and that no one "had illegally scanned the same ballots multiple times." *Id.*,at.¶¶44,49-50;

- Two articles by fact-checking websites confirming that "no observers had been asked to leave" and that the video showed "a normal tabulation process" *Id.*,at.¶¶42-43;

- Two recounts, including a hand recount and a machine recount, reflecting the absence of any multiple counting. *Id.*,at. ¶52;

Additional confirmations were publicly reported in the midst of Giuliani's defamatory campaign. *Id.*,at.¶¶54,55,102–33.

## B.    Giuliani's Conduct Devastates Plaintiffs' Lives.

Plaintiffs suffered immediate and devastating effects from Giuliani's conduct. Giuliani called for Plaintiffs to be questioned, investigated, and scrutinized, **Dkt.22,at.¶¶37–39,91-92,96,140–62**, and people listened: Strangers called, emailed, texted, and messaged Ms. Freeman, Ms. Moss, and even Ms. Moss's then-fourteen-year-old son, acting on what Giuliani told them: that Ms. Freeman and Ms.

Moss were criminals and traitors who had stolen the election. **Day2AMTr.62:16–20,73:7–20; Day3PMTr.109:12–16.** They received hundreds of messages, using racist slurs and profanities and saying they deserved to hang from trees, or from the Capitol dome "close enough to hear your necks snap!" **PTX-165A,at.395.** One person told Ms. Freeman that they "know. Where. You. Sleep," and another emailed: "Pack your shit. They are coming for you. I'm not far behind. I'm coming for you also. Trash will be taken to the street in bags." ***Id.,at.Freeman_Giuliani-00000090–91.*** Perhaps most devastating were the anonymous voicemails left for Ms. Freeman and Ms. Moss, which the jury heard at trial, just two examples of which included:

- **PTX-150**: "Lady Ruby, you're going to prison you f**king c***! You c*** f**king bitch. You racist piece of shit. You're going to go to f**k prison and you're going to sit there and you're going to live with the rats and the f**king maggots. You f**king piece of sh*t, you and that fat f**king daughter c*** of yours. You f**king dumb f**king whores, you got used, you got abused, and now you're going to f**ing prison. Eat sh*t and die you f**king racist c*** you and your fat f**king daughter that scrawny f**king piece of sh*t that helped you pulled this f**king USB shit off. You are f**king done you f**king whore!"

- **PTX-144**: "Hey Ruby, um, we're going to burn your store down and we're going to burn all those n***** clothes that you sell that nobody wants. Oh and your daughter, she's a f**king whore prostitute."

Ms. Freeman fled her home at the direction of the FBI. **Day3PMTr.133:17–134:128.** She ultimately sold that home, in which she had lived for more than twenty years, moving to a new neighborhood where she knows no one and is scared to introduce herself to her neighbors. **Day3PMTr.104:20–21,135:6–16,137:21–**

9

**138:16.** She lives in fear of hearing her name, and has changed the name of the business she spent years building around her name, Lady Ruby. *Id.*,at.146:23–147:3. Ms. Moss has since left her job with Fulton County, after being passed over for a promotion and being told that she would never be allowed to touch another ballot. **Day2AMTr.50:15–52:1.** She has been diagnosed with acute stress disorder and major depressive disorder with acute distress, fears her son finding her hanging outside their front door, and is terrified of going anywhere alone. **Day2AMTr.63:5–9,64:3–22,66:5–67:21.**

### C.    The District Court Denies Giuliani's Motion to Dismiss

Giuliani moved to dismiss, raising exactly seven arguments why the Complaint failed to state a claim. Three of them are irrelevant to the issues raised on appeal. **Dkt.26-2,at.10–12.** Three others are notable for what they did *not* argue: (1) Giuliani challenged Plaintiffs' allegations of the "meeting of the minds" necessary to state a claim for civil conspiracy, but said nothing about President Trump's actual malice, **Dkt.26-2,at.12–20**, (2) Giuliani argued that his statements were "protected opinions" rather than false statements of fact, but did not argue that the Complaint failed to allege actual malice in connection with those publications, **Dkt.26-2,at.14,17**, and (3) Giuliani raised a narrow challenge to the allegations of actual malice with respect to Giuliani's statements about Ruby Freeman's supposed criminal history. **Dkt.26-2,at.18–19.** Giuliani made this last argument on the

premise that Ms. Freeman was a limited-purpose public figure, but did not make any such claim about Ms. Moss. ***Id.***

Finally, Giuliani argued that the IIED claim should be dismissed because it was duplicative of Plaintiffs' defamation claim—the sole argument presented here that the District Court was given an opportunity to rule on below. **Dkt.26-2,at.19–20.**

The District Court denied the motion to dismiss. **Dkt.31.** As relevant here, the District Court held that Plaintiffs had adequately alleged that they were private figures (a conclusion Giuliani does not challenge on appeal). In the alternative, the Court also held that the Complaint alleged sufficient facts to establish Giuliani's actual malice with respect to the narrow challenge Giuliani had raised regarding his accusation that Ruby Freeman had a criminal background. **Dkt.31,at.20.** The District Court also rejected Giuliani's argument that the IIED claim was duplicative because "IIED is a separate and distinct tort from defamation," which D.C. law treats differently. ***Id.*,at.22–23.** The District Court also rejected Giuliani's other arguments not raised in this appeal.

**D.    Giuliani Disobeys Discovery Orders and Fails to Preserve Evidence Essential to Plaintiffs' Claims.**

During discovery, it became clear that Giuliani had made no efforts to satisfy his obligation to preserve evidence, and he consistently refused to conduct reasonable searches of materials in his possession. At one point, Giuliani

"acknowledged his obligation to preserve documents related to this litigation and that this obligation arose before plaintiffs filed this action, stating," on the record, "'I have been doing this for 50 years; I understand the obligations.'" **Dkt.94,at.14 (quoting May19Tr.at.67:21–68:6).** Nevertheless, after extensive motions to compel, orders to produce materials, and monetary sanctions, the majority of Giuliani's document production consisted of a re-purposed production from another matter that "consist[ed] almost entirely of non-usable, nonresponsive materials," "more than half" of which were "indecipherable blobs" of data. **Dkt.94,at.20** (cleaned up).

### E.    Giuliani Stipulates to Liability for Plaintiffs' Claims.

In light of Giuliani's persistent discovery misconduct, and having been denied any meaningful discovery with which to litigate their claims, Plaintiffs moved for Rule 37 sanctions including a default judgment on liability. **Dkt.81.**

In response, Giuliani attempted to evade the sanctions motion by filing what he styled a "Nolo Contendre [sic] Stipulation," in which he "concede[d] solely for purposes of this litigation before this Court and on Appeal" that his statements satisfied the elements of defamation. **Dkt.84-2.** According to his response to the sanctions motion, through that stipulation Giuliani "stipulate[d] to all pertinent facts Plaintiffs would need from him to establish liability, making discovery sanctions and further discovery from him unnecessary." **Dkt.84.** The District Court quickly noted

the stipulation's lack of clarity, and gave Giuliani a deadline to submit a superseding stipulation fully conceding liability on Plaintiffs' claims, or to clarify precisely what he had conceded through the first stipulation. **Aug.4.2023.Minute.Order.**

Giuliani then filed a second, "Superseding Nolo Contendre [sic]," in which he reiterated his concessions on all elements of Plaintiffs' defamation claims, and conceded all other elements of liability—including "his liability as to Plaintiffs' claim for punitive damages." **Dkt.90.** Giuliani specifically reserved *only* three arguments: his right to contest Plaintiffs' damages, his right to seek settlement credit or setoff, and a single legal objection to his own liability: "Giuliani specifically preserve[d] his arguments that the statements complained of are protected and non-actionable opinion for purposes of appeal." *Id.* And Giuliani's counsel confirmed that this stipulation was intended to stipulate all elements of defamation and IIED, including "the malice element (to the extent it is necessary)." **Dkt.86-6.**

###    F.    The District Court Enters a Default Judgment Sanction.

The District Court granted Plaintiffs' motion for sanctions and entered a default judgment on liability. **Dkt.94.** As the District Court found, "[t]he bottom line is that Giuliani has refused to comply with his discovery obligations and thwarted [Plaintiffs'] procedural rights to obtain any meaningful discovery in this case." *Id.,*at.2. Instead, he "subvert[ed] the normal process of discovery in a straight-forward defamation case." *Id.* Thanks to Giuliani's "willful shirking of his discovery

obligations in anticipation of and during this litigation," the "result of [Plaintiffs'] efforts to obtain discovery from Giuliani, aside from his initial production of 193 documents, [was] largely a single page of communications, blobs of indecipherable data, a sliver of the financial documents required to be produced, and a declaration and two stipulations from Giuliani," the sum of which indicated "his preference to concede plaintiffs' claims rather than produce discovery in this case."*Id.,*at.3,5. The District Court found that "[t]he only reasonable explanation for Giuliani's blatant disregard for satisfying his preservation obligations—despite fully understanding them—is that he intentionally and willfully ignored them." *Id.,*at.39–40.

The District Court further found that the evidence Giuliani had failed to preserve was "relevant to all of [P]laintiffs' claims." *Id.,*at.35. Absent "access to circumstantial evidence of Giuliani's state of mind—in the form of his messages and email communications with associates or other contemporaneous records of his thoughts . . . —[P]laintiffs are severely hampered" in contesting Giuliani's actual malice arguments. *Id.,*at.35–36. The same was true of Plaintiffs' ability to prove their IIED claim, and their civil conspiracy claim. *Id.,*at.36. And the Court found that "had Giuliani properly satisfied his preservation and production obligations, he should be in possession of documentary evidence that goes to the heart of claims in this lawsuit," *id.,* and that his failure to do so "significantly prejudiced plaintiffs' abilities to prove their claims." *Id.,*at.38.

The District Court accordingly entered a default judgment as to liability, but determined that a trial would be held to quantify Plaintiffs' damages. **Id.,at.56.** Because evidence relating to damages remained relevant to that trial, the District Court directed compliance with discovery orders relating to damages and warned Giuliani that failure to comply would result in adverse inferences. **Id.** Giuliani failed to comply with that order, **Dkt.100**, and the District Court ultimately awarded adverse inferences and preclusion instructions, none of which is challenged in this appeal, including that the jury would be instructed that "it must, when determining an appropriate sum of compensatory, presumed, and punitive damages, infer that" Giuliani was "intentionally trying to hide relevant discovery" about his financial situation "for the purpose of artificially deflating his net worth," and precluding Giuliani from arguing at trial "that he is insolvent, bankrupt, judgment proof, or otherwise unable to defend himself, comply with this Court's orders, or satisfy an eventual judgment." **Dkt.102,at.4–5**.

### G. The Damages Trial.

In the lead-up to trial, the parties agreed to, and jointly submitted, proposed jury instructions—subject only to "limited objections" raised by Giuliani. **Dkt.115,at.30.** Giuliani's sole disagreements with the joint proposed jury instructions were reflected in a redline he submitted as an exhibit to the joint pretrial order. **Dkt.105-5.** Soon after lodging those limited objections, however, Giuliani

expressly withdrew his objection to the joint proposed jury instructions "regarding 'Certain Matters Already Decided' and 'Defamation,' reserving the right" only "to challenge the Court's underlying Sanctions Orders that give rise to those instructions, the propriety of the default judgment, and the propriety of a jury trial on appeal," but conceding that if those "prior Orders stand on appeal," he did "not object to those jury instructions as worded." **Dkt.116,at.1.**

Following the first day of trial, after listening again to a summary of the evidence demonstrating the falsity of his claims and the devastating impact they had on Plaintiffs' lives, Giuliani held an impromptu press conference outside the courthouse's Third Street entrance, at which he doubled down on his accusations, stating: "When I testify, the whole story will be definitively clear that what I said was true, and that, whatever happened to them—which is unfortunate about other people overreacting—everything I said about them is true." **Dkt.126,at4.** When asked whether he regretted his actions, Giuliani stated: "Of course I don't regret it . . . I told the truth. They were engaged in changing votes." ***Id.*** Finally, when a reporter pointed out that there was "no proof of that," Giuliani stated, "You're damn right there is . . . . Stay tuned." ***Id.*** After the close of Plaintiffs' case, Giuliani rested without putting on a defense.

### H.     The Jury Awards Compensatory and Punitive Damages.

At the Rule 50(a) stage, Giuliani "move[d] for a directed verdict that the relief pleaded by plaintiffs in the amended complaint fails to state claims on which relief can be granted." **Day4AMTr.34:5-8.** In particular, Giuliani argued that Plaintiffs had failed to allege and prove actual malice with respect to certain statements *not* alleged in the Complaint but relevant to the jury's damages calculation—an argument he has not advanced on appeal. **Day4AMTr.34:15-21.** Giuliani also argued that there could not be civil conspiracy liability with respect to those statements. **Day4AM.Tr.37:4-6.** Giuliani's remaining arguments have not been raised on appeal. **Day4AMTr.37:7-16; Day4AMTr.37:17-38:7.**

The District Court denied the Rule 50(a) motion. **Day4AMTr. 42:1-46:2.** In rejecting Giuliani's arguments, the District Court observed that "the evidence presented at trial has only further established a legally sufficient evidentiary basis for a jury to find for plaintiffs on the three claims they present due to the default judgment." **Day4AMTr.43:15-18.** In particular, that evidence "demonstrated that these statements made by Giuliani and his co-conspirators, again and again and again—up to the first day of trial in this case—was totally false." **Day4AMTr.44:10-13.** The District Court concluded that "Based on all of the evidence presented by plaintiffs, . . . *a reasonable jury would have a legally*

*sufficient evidentiary basis to find for the plaintiffs and* award at least some damages." **Day4AMTr.45:14-25** (emphasis added).

The case was submitted to the jury, which returned a verdict awarding Ms. Freeman $16,171,000 and Ms. Moss $16,998,000 in compensatory damages for defamation, awarding Plaintiffs $20,000,000 each in compensatory damages for IIED, and a combined $75,000,000 in punitive damages. **Dkt.135.**

## I.     The District Court Denies Giuliani's Post-Judgment Motions.

Giuliani filed a postjudgment motion pursuant to Rule 50(b), alternatively seeking a new trial and/or to alter or amend the judgment pursuant to Rule 59. **Dkt.147.** Giuliani's eight-page motion raised four arguments and *did not challenge the size of the damages awards*, or otherwise contend that the evidence was insufficient to support the verdict—with only two exceptions relating to the necessity and sufficiency of expert testimony, neither of which has been pursued in this appeal. *Id.*

Giuliani's remaining two arguments were 1) that Plaintiffs' IIED claims were time-barred to the extent they relied on pre-December 23, 2020 statements, another argument not raised on appeal, and 2) that he "incorporat[ed] by reference his arguments in his Motion to Dismiss," as to the allegations in the Amended Complaint, and "incorporate[d] by reference" his objections to Plaintiffs' introduction at trial of evidence relating to "statements not identified in the

18

Complaint," including that those statements "suffere[d] from the same defects" as the "pleaded conduct[.]" *Id.***at.4.**

The District Court denied the motion. **Dkt.159,at.1-48.** As relevant here, the District Court rejected Giuliani's challenges to the sufficiency of the complaint, noting that he had "raised nothing new with respect to these issues" and did not "pretend otherwise." **Dkt.159.at.18,20.** Second, the District Court rejected Giuliani's rehashed challenge to Plaintiffs' use of so-called "unpleaded conduct" as evidence going to damages for the same reasons as before, noting that Giuliani had "offer[ed] no new basis to revisit" that argument. *Id.***at.21-22;** *see id.***at.23-25.**

## SUMMARY OF ARGUMENT

1. All but one of Giuliani's arguments on appeal are waived, forfeited, or otherwise beyond this Court's power to review because they were not raised in a postverdict motion in the trial court. And with one exception—his challenge to the amount of the damages awards—Giuliani does not even bother to argue why this Court should overlook these barriers to review. Although all of Giuliani's arguments are meritless, this case calls for a simpler resolution than painstaking appellate review of a dozen unpreserved arguments. Instead, this Court should enforce its waiver and forfeiture rules strictly: doing otherwise would reward, rather than deter, the willful discovery misconduct and abusive litigation behavior that Giuliani engaged in below.

2a. To the extent this Court considers the merits of Giuliani's arguments on appeal, they are meritless. Giuliani's only preserved argument challenges a supposed duplicative recovery for defamation and IIED, but no such duplicative recovery occurred: the jury was expressly instructed not to award duplicative damages and presumptively followed that instruction.

2b. Giuliani's other appellate arguments are raised for the first time here. Giuliani's challenge to the Complaint's allegations of actual malice focuses on a limited subset of the statements for which he was held liable, and depends on the implausible premise that each one was a mere interpretation of a supposedly ambiguous video—despite the fact that at the time, his own statements trumpeted that video as self-evident proof that Plaintiffs had engaged in criminal election fraud.

2c. Giuliani's challenge to the allegations of civil conspiracy are similarly waived, and lack any merit. His argument that one co-conspirator's alleged immunity shields Giuliani himself is contradicted by black-letter law and, as to each of the co-conspirator statements on which liability was predicated below, Giuliani was liable not just through vicarious conspiracy liability, but because those statements were reasonably foreseeable publications of his own defamatory claims.

2d. Giuliani's unpreserved challenge to the IIED allegations on actual-malice grounds is wrong for the same reasons as with respect to defamation, but is particularly misplaced with respect to IIED because the compensatory damages

award for IIED did not include presumed damages, rendering actual-malice issues irrelevant to that aspect of the judgment. And the Complaint does allege sufficiently extreme and outrageous conduct.

3. Giuliani's contention that a "heightened foreseeability" requirement should have applied to the damages inquiry was not raised below and is contradicted by the case on which he relies. To the contrary, there is no such "heightened foreseeability" requirement where, as here, a defendant's liability is predicated on intentional tortious conduct (or, indeed, anything more than a "pure failure to protect" through mere omissions).

4. Giuliani's challenge, under FRE 605, to the District Court's instruction as to "matters already decided," which included statements informing the jury of the discovery misconduct that had already transpired, is similarly meritless. Further, it is harmless because the District Court *also* awarded and read to the jury adverse inferences that had the same effect as the challenged instruction—but Giuliani does not challenge those adverse-inference instructions on appeal. Giuliani's appeal to the "cumulative error" doctrine adds nothing to this argument, as he identifies no additional errors, much less establishes that they together constituted the denial of a "fair trial."

5. Giuliani's challenge to the availability of punitive damages is waived and meritless. Giuliani *agreed* below that the default judgment entitled Plaintiffs to seek

21

punitive damages, and not only consented to but proposed his own instructions requiring the jury to determine the amount of such damages.

6. Finally, Giuliani challenges the size of the damages awards on appeal but acknowledges he never did so in a post-verdict motion, as is required to permit appellate review. Giuliani's justification for first-instance review here—his only such attempt as to any of his unpreserved arguments—cannot succeed. But even so, his arguments have no merit, particularly when considered in light of the overwhelming deference to jury verdicts that this Court applies.

## ARGUMENT

**I.     All But One of Giuliani's Thirteen-Plus Appellate Arguments Were Never Raised Below, and Are Accordingly Waived or Forfeited.**

Giuliani's opening brief lists thirteen discrete issues on appeal (and several more appear in the body of his brief). **Appellant's.Br.1-3.** Yet *only one* of Giuliani's arguments was presented to the District Court—the rest are raised for the first time in this Court, while the vast majority of the issues that were *actually* presented to the District Court have been abandoned. This Court's task is thus simple, because "[i]t is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *Keepseagle v. Perdue*, 856 F.3d 1039, 1053–54 (D.C. Cir. 2017) (quoting *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984)). These doctrines equally "apply to constitutional objections." *Keepseagle*, 856 F.3d at 1054.

Waiver "is the intentional relinquishment or abandonment of a known right," and "extinguishes an error so that there is no review, because the defendant has knowingly and personally given up the waived right." *United States v. Olejiya*, 754 F.3d 986, 992 (D.C. Cir. 2014) (cleaned up). As discussed further below, many of Giuliani's new arguments on appeal were *waived* (not just forfeited) below, such that "there is no review" to be had on appeal. *Id.* In particular, in his Superseding Nolo Contendre [sic] stipulation, Giuliani expressly conceded that the Amended Complaint established his liability on all elements of Plaintiffs' claims, reserving

only the right to contend on appeal that his statements constituted protected opinion—an argument he has not raised here. *Supra*, at 12. His legal challenges to the Complaint are thus not just forfeited, but affirmatively waived, because his stipulations were knowing, voluntary, and made with the advice of counsel. Indeed, these stipulations constitute binding waivers because they were "knowing and intentional decision[s] and not a mere oversight," "[w]hether or not there was a strategic purpose" behind them. *Olejiya*, 754 F.3d at 993.

Meanwhile, Giuliani's newly raised challenges to the sufficiency of the trial evidence, including his challenges to the amount of the damages verdicts, are similarly unreviewable because *none* of them was raised in a post-verdict motion. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 400–01, 402 (2006).

In any event, even where an issue is merely forfeited, an appellate court may entertain it only in "exceptional circumstances," "where the proper resolution is beyond any doubt," or where "injustice might otherwise result." *Keepseagle*, 856 F.3d at 1055. With only one exception, Giuliani does not explain why the Court should entertain his new arguments under that standard. As then-Judge Gorsuch has explained, even where arguments were "merely forfeited before the district court," an appellant's failure to "explain in her opening brief" why they should be entertained "waives the arguments" on appeal. *McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010).

24

It does not matter for these purposes that Giuliani's liability was determined via default judgment. "[A] party forfeits a claim by failing to raise it below when the party knew, or should have known that the claim could be raised." *Keepseagle*, 856 F.3d at 1054. Giuliani had a full and fair opportunity to challenge the sufficiency of the complaint *before* the default judgment, and a full and fair opportunity to litigate the scope of the damages trial and the sufficiency of the trial evidence *after* the default judgment. And he took that opportunity: each of the new arguments raised on appeal would have been ripe for adjudication in the District Court at times when Giuliani was busy raising other objections. In normal circumstances, addressing "newly raised claims" would "not only pervert the adversary process," but require this Court to "engage in unduly weighty and cumbersome decision-making without a decent record from the District Court." *Id.* at 1055. Here, it would be all the more perverse to so so, given the District Court's undisputed factual findings that Giuliani willfully distorted that record through his own discovery misconduct. **Dkt.94.**

Plaintiffs address Giuliani's waived and forfeited arguments below, each of which is utterly meritless—but they should not have to. This is the quintessential case calling for strict application of established waiver and forfeiture principles. As this Court has explained, "federal courts may depart from the party presentation principle and rules of forfeiture only in distinct and narrow circumstances in which the judiciary's own interests are implicated." *Maalouf v. Islamic Republic of Iran*,

923 F.3d 1095, 1112 (D.C. Cir. 2019). That is plainly not the case here; to the contrary, the judiciary's interests favor strict enforcement of waiver and forfeiture rules. Giuliani's approach—lose a motion to dismiss, willfully procure the loss of evidence, intentionally obstruct discovery, only then to raise virtually all new arguments on appeal with no explanation for why they should be heard in the first instance—would be unacceptable for a *pro se* litigant, let alone an attorney of fifty years, and former U.S. Attorney, represented here by able counsel.

There is no reason to hear those new arguments now and every reason not to: Entertaining them would not only reward Giuliani, it would invite behavior from other litigants that should instead be deterred. "If the courts must stop to inquire where substantial justice on the merits lies every time a litigant refuses or fails to abide the reasonable and known rules of procedure, there will be no administration of justice. Litigants must be required to cooperate in the efficient disposition of their cases." *United States v. Seigel*, 168 F.2d 143, 146 (D.C. Cir. 1948). Here, Giuliani's entire litigation strategy was one of obstruction and abuse. The Court should reject Giuliani's unpreserved arguments on that basis alone.

## II. The Complaint and Default Judgment Established Giuliani's Liability on All Claims.

Each of Giuliani's challenges to the sufficiency of the complaint—including both the one he preserved below and the remainder which he did not—is meritless. As the District Court properly recognized, the consequence of a default judgment is

that the "the well-pled allegations in the complaint *and all inferences that may reasonably be drawn from those allegations* are deemed to be true," **Dkt.119.at.5** (emphasis added). *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). Giuliani simply ignores that standard on appeal, cherry-picking his preferred allegations, ignoring others, and drawing every inference he can think of—reasonable and, more often, unreasonable—in his own favor. His arguments are meritless.

### A. Giuliani's Sole Preserved Argument—that the District Court Improperly Permitted a Double Recovery for Defamation and IIED—Is Meritless.

Giuliani argues that the District Court erred by entering judgment on a verdict awarding damages for both defamation and IIED. **Appellant's.Br.36-37.** This is the *sole argument* Giuliani even arguably raised below—and even then, he did not raise it when he was required to do so. At the motion-to-dismiss stage, Giuliani contended in a single paragraph that the IIED claim should be dismissed as duplicative. **Dkt.26-2,at.19-20.** The District Court rightly rejected that argument, **Dkt.31,at.22–23.** As the District Court explained, "[u]nder D.C. law," the elements of an IIED claim "significantly differ from those for a defamation claim," and "[t]he D.C. Court of Appeals has also treated the two torts differently." *Id.* Giuliani has not offered any basis to depart from that conclusion on appeal—he points to no D.C. case holding that a plaintiff may not pursue both defamation and IIED claims simply because one

of the wrongs alleged in the Complaint is the publication of false statements. And Giuliani simply ignores that, in this case, defamation liability was predicated on 12 distinct statements, while IIED liability was predicated by a far wider course of conduct targeting Plaintiffs for harassment, *Supra*, at 6-10.

The cases Giuliani cites do not undermine, in any way, the District Court's findings. *Moldea v. New York Times Co.* involved—and described—the "great deal of overlap" between defamation and *false light*, 15 F.3d 1137, 1150–51 (D.C. Cir. 1994), a tort that the Court has called "essentially a type of defamation," *Mittleman v. United States*, 104 F.3d 410, 415 (D.C. Cir. 1997). In contrast, the elements of IIED differ significantly from those of defamation (and false light). **Dkt.31.at.22-23**; *see* Restatement (Second) of Torts § 652E (October 2024 update).

Similarly, Giuliani's reliance on *Couch v. Verizon Communications Inc.* is misplaced. There, this Court simply held that where an IIED claim is "inherently tied to, or duplicative of," the primary defamation claim and the plaintiff fails to plausibly plead a defamation claim, the derivative IIED claim likewise fails. 105 F.4th 425, 436 (D.C. Cir. 2024). That must be so, this Court explained, to ensure that plaintiffs may not rely on an "alternative tort with a less demanding standard" in order to "avoid the constitutional requisites of a defamation claim," *i.e.*, the actual malice standard. *Id.* (cleaned up).

*Moldea* and *Couch* thus stand only for the propositions that a plaintiff may not engage in duplicative recovery or avoid the Constitutional "actual malice" requirement by pursuing defamation and related tort claims together. Neither occurred here. To the contrary, Giuliani stipulated that Plaintiffs had adequately pleaded their defamation and IIED claims, including actual malice (reserving only an opinion defense for appeal). And Giuliani has failed to establish that Plaintiffs' IIED claim is either "inherently tied to, or duplicative of," their defamation claim. Nor could he. Plaintiffs alleged that Giuliani's conduct targeted Plaintiffs for harassment, that the intended harassment occurred in spades, and inflicted severe emotional harm. **Dkt.22,at.¶¶12,182-186.** And Plaintiffs proved as much at trial, leading to a separate, significant award for IIED. **Dkt.144,at.2.** Importantly, in the Complaint *and* at trial, Plaintiffs alleged and proved distinct conduct giving rise to both torts, making clear that the jury could not award IIED damages for the actionable defamatory statements, but only for the course of conduct separate from those publications. **Day4AMTr.150:17-20,154:14–155:01,156:16-18**.

In any event, any error here would be harmless, because Plaintiffs *did not* recover duplicative damages for defamation and IIED. The jury was specifically instructed that it was prohibited from awarding double recovery for the two claims— that instruction was the result of a joint proposal, without objection, by the parties, which admonished the jury that "the amount of compensatory damages for

29

intentional infliction of emotional distress must compensate solely for emotional damages, and should not attempt to compensate plaintiffs for any harm for which you have already awarded compensation on plaintiffs' defamation claim." **Dkt.137,at.10; Day4AMTr.154:14-155:1.** Plaintiffs' counsel emphasized that anti-duplication instruction in closing, **Day4AMTr.156:16-18**, and the jury entered separate amounts on the parties' agreed verdict form. **Dkt.135.** This Court must "assume juries follow their instructions," and may not conclude otherwise where—as here—Giuliani has "raised no argument nor proffered evidence that would suggest" otherwise. *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 166 (D.C. Cir. 2015).

### B.    Giuliani's Actual Malice Argument Is Waived, and Meritless.

#### 1.    *Giuliani's Actual-Malice Argument Is Waived.*

Giuliani argues that the Complaint does not "adequately allege actual malice," **Appellant's.Br.24-32**, but this argument is plainly waived. Below, the *only* actual-malice objection Giuliani *ever* raised was a specific challenge to the Complaint's allegations regarding Giuliani's statements about Ms. Freeman's (nonexistent) past criminal conduct, premised on the argument that Ms. Freeman was a limited-purpose public figure. *Supra*, at 13-14. Giuliani has dropped that argument, but his having raised it below remains "significant because it demonstrates that [he] did not simply overlook the issue" of actual malice, and demonstrates "a knowing and intentional

decision" not to raise a broader actual-malice argument that renders that argument waived on appeal. *Olejiya*, 754 F.3d at 993.

Additionally, and independently, Giuliani expressly waived and abandoned any actual-malice argument he may have had when he unambiguously stipulated to all elements of liability, *specifically* reserving only the question whether his statements were constitutionally protected opinion. **Dkt.90**. His counsel confirmed in writing that this meant that "he is stipulating to the malice element (to the extent it is necessary) as he would have to for punitive damages." **Dkt.86-6,at.2.** These belated actual malice arguments are waived.[1]

Giuliani's appeal to *Bose*'s rule of "independent" review of issues that raise First Amendment concerns does not change this result. **Appellant's.Br.23**; *see Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984). The *Bose* rule provides for appellate review independent of the "*trier of fact*," not independent of the parties' own arguments. *Bose Corp.*, 466 U.S. at 501. Actual-malice arguments remain subject to ordinary rules of party presentation. *Keepseagle*, 856 F.3d at 1054; *see, e.g.*, *Cannon v. Peck*, 36 F.4th 547, 559 n.7 (4th Cir. 2022) (actual-malice waived if not presented in opening appellate brief); *Republic Tobacco Co. v. N. Atl. Trading*

---

[1] To the extent these arguments are "merely" forfeited, Giuliani's failure to explain why they should nonetheless be considered still bars review. *Supra*, at 24.

*Co.*, 381 F.3d 717, 733 (7th Cir. 2004) (actual malice waived when not raised in the district court).

### 2. *The Complaint Plausibly Alleges Actual Malice.*

In any event, the Complaint's allegations more than sufficiently allege actual malice. Here, as "at the motion-to-dismiss stage," the Court's task is to review the sufficiency of the complaint's allegations: even with respect to actual malice, this Court does "not require [a plaintiff] to do any more than plead sufficient facts to plausibly state his claim." *Couch*, 105 F.4th at 432. Although actual malice must eventually be proven by clear and convincing evidence, at the motion-to-dismiss stage, a court considers only whether the plaintiff "plausibly alleged the types of facts that can, if proven, satisfy that burden" by showing that the defendant "either knew their statements were false, had high awareness that the statements were probably false, or had serious doubts about the accuracy of the statements." *Id.* And, as always at the motion to dismiss stage, the court draws all reasonable inferences in favor of the non-moving party—here, Plaintiffs.

The Complaint easily satisfied that standard. Plaintiffs specifically alleged that Giuliani "knew that his statements about Ms. Freeman and Ms. Moss were not true or published them with reckless disregard for the truth," **Dkt.22,at.¶102;** *see also id.***at.¶¶5,169,179**, allegations deemed admitted by Giuliani's default. And Plaintiffs backed up that allegation with specific allegations demonstrating its truth,

and from which a factfinder could draw the reasonable inference that it was true: the Complaint laid out in detail facts demonstrating Giuliani's subjective awareness of evidence refuting his false claims. *Supra*, at 7-8.

Giuliani's contrary arguments on appeal misunderstand the statements that formed the basis of his defamation liability. Each of those statements was published on or after December 23, 2020, more than two weeks after Giuliani possessed conclusive evidence demonstrating the falsity of his claims. **Dkt.22,at¶57-101.** Yet Giuliani's actual-malice arguments focus on statements *prior* to that date—especially his statements about the State Farm Video on December 4, 2020. **Appellant's.Br.25-26** (citing **PTX-251**). But Giuliani's mental state at the time he made those statements says little, if anything, about his mental state when repeating those statements *relentlessly* later on, weeks after learning the truth, and for most of the following year. **Dkt.22,at¶57-101.**

Giuliani contests the Complaint's allegations of actual malice by characterizing his statements as no more than a "rational interpretation of ambiguous information"—*i.e.*, the State Farm Video. **Appellant's.Br.25-26,29.** According to Giuliani, his statements amounted to nothing more than a "misconception" based on what the video showed, namely "election workers pulling containers out from under [a] second table, and wheeling those containers to an area where votes would be

tabulated or counted," while the "few persons tabulating and counting were alone in the room." *Id.***at.6, 25-26.**

That argument shares the same facial implausibility as Giuliani's actual-malice argument as a whole: even if it were accurate as to Giuliani's pre-December 23, 2020 statements (as to which Plaintiffs did not seek, and the Court and jury did not impose, defamation liability, **Dkt.115,at.12-18**), it would have no application to the statements on which defamation liability *was* predicated, all of which post-dated December 23, 2020—some by many months—and long post-dated Giuliani's possession of extensive contrary evidence as early as December 7, 2020. *Supra*, at 6-8.

In any event, this argument is *not* minimally supportable because the statements on which liability was predicated in this case do not even purport to *describe* those events, much less "interpret" them "rationally": instead, to take but a few examples, Giuliani repeatedly claimed that Plaintiffs were "triple counting ballots," **Dkt.22,at.¶72**; and "handing off flash drives to each other," **Dkt.22,at.¶90**; that "every single ballot" Ms. Freeman "did went to Biden," **Dkt.22,at.¶84**; that Plaintiffs "creat[ed] a false story" to "get[] everybody out" and then scanned ballots in a way that "takes Biden and multiplies it by 5," **Dkt.22,at.¶69**; that Ms. Freeman is "now under arrest," **Dkt.22,at.¶63**, and that she has "a history of voter fraud participation," **Dkt.22,at.¶66.** In his opening brief, Giuliani does not even attempt

to explain how those factual claims represented a "rational interpretation" of any particular or specific part of the video as he now describes it, or even how they are related to the events shown in the video at all—which they are not.

Further, Giuliani's statements included assertions about events supposedly demonstrated on video that could not even arguably have appeared on the State Farm Video. In addition to the foregoing, he claimed that he possessed video showing that "observers are being thrown out of the room" because a "phony excuse of a water main break was used" **Dkt.22,¶66;** *id.* **¶69**, that "they closed the doors" *id.***¶72** and "make sure the doors are locked so nobody else can come in," *id.* **¶74,** and that "they deliberately threw people out and counted the ballots in private" *id.***¶90-91**. But nothing in the State Farm Video even arguably shows observers being thrown out, doors closed or locked, or any "excuse" used—indeed, *there is no audio* accompanying the video. **PTX-251;** *see* **PTX-187.** And by Dec 23, before each of those statements were made, witness statements and an investigator's affidavit had contradicted each of those claims. *Supra*, at 6-8. Nor can Giuliani possibly justify as an "interpretation" his June 14, 2021 statement that "there are other tapes of them earlier in the day, handing off—handing off small, hard drives and flash drives, those flash drives were used to put in the machines" **Dkt.22,at¶91,** and his July 23, 2021 statement that "earlier in the day they were passing around hard drives or flash

drives," *id.*¶**94**—both statements that assert that some other undisclosed (and nonexistent) video proves his claims.

Even on its own terms, Giuliani's attempt to recharacterize his statements about Plaintiffs as mere "interpretation" of "ambiguous" information is contradicted by the statements themselves. As *Bose* itself recognizes, the "rational interpretation" doctrine has no application "when the alleged libel purports to be an eyewitness or other direct account of events that speak for themselves." 466 U.S. at 512 (internal quotation marks omitted). That is exactly the case here. According to *Giuliani himself*, the video required no interpretation: the "tape . . . in Georgia [was] crystal clear," leaving "*no doubt* that people stole votes." **Dkt.22,at.¶96** (emphasis added); *see id.*at.¶90 ("They committed the crimes on video. You can see them do it."). Giuliani called the Video "one of the most dramatic examples I've ever seen of someone trying to steal an election," **Appellant's.Br.26,** and claimed that it made election fraud "the easiest to demonstrate because it's on video," in which "we can all see right in front of our eyes, we can see them stealing the votes," and "counting it four and five times." **Dkt.22,at.¶71.** Giuliani's problem is not that he *misinterpreted* ambiguous evidence—it is that, as the Complaint alleges, he entirely made up things that the video indisputably *never* shows.

The cases Giuliani cites further confirm that the "rational interpretation" defense does not apply where the challenged statements concern "materials [that] by

their very nature require interpretation." *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 316 (D.C. Cir. 1994). Those types of statements include book reviews (*Moldea*), a *Consumer Reports* review of a stereo system (*Bose*), a reporter's summary of a governmental commission's written report (*Pape*), and a journalist's alteration of an interviewee's statement that did not "result[] in a material change in the meaning conveyed by the statement" (*Masson*). In any event, Giuliani does not even begin to explain how he could invoke the protections of this "rational interpretation" defense on the established facts here: that would require him to show that he honestly harbored a mistaken, but rational, interpretation. *See Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 519 (1991); *Time, Inc. v. Pape*, 401 U.S. 279, 289-90 (1971). Here, the allegations deemed admitted by default include that Giuliani "knew" his statements about the videotape were false from the beginning; never investigated his claims; and instead "specifically avoided contacting sources who had evidence to disprove" his lies and "ignored" and "consciously avoided" the evidence contradicting his lies by those who did investigate. **Dkt.22,¶¶102, 128–29, 131**. If Giuliani wished to contest those facts and show that, to the contrary, he honestly believed the video to show criminal activity, he had the chance to put on that factual defense below but instead chose obstruction and default.

Giuliani's remaining arguments attempt to show why a few individual allegations are, by themselves, insufficient to demonstrate actual malice.

**Appellant's.Br.24-32.** But a complaint must be reviewed "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Ho v. Garland*, 106 F.4th 47, 50–51 (D.C. Cir. 2024) (internal quotation marks omitted).

*First*, Giuliani suggests that he was just parroting statements that a surrogate for the Trump campaign made at a December 3, 2020 Georgia state senate hearing. **Appellant's.Br.27-28.** But the statements on which defamation liability was predicated began weeks *after* December 3, 2020, and those statements go far beyond the statements of the Trump Campaign surrogate. *Compare* **Dkt.22,at.¶38,** *with* *id.***at.¶¶57-101.**

*Second***,** Giuliani attempts to justify his admitted and purposeful avoidance of the repeated refutations from Mr. Sterling and the Republican-led Office of the Secretary of State of Georgia by asserting that they "were biased, motivated to upload the earlier institutional decision that no fraud had occurred." **Appellant's.Br.29.n.1.** That represents a factual inference in Giuliani's favor that this Court may not draw, and which Giuliani forfeited the right to pursue below. And regardless, this argument simply ignores that even if Giuliani *were* entitled to such a favorable inference, the Complaint alleged other facts establishing Giuliani's actual malice for each defamatory statement: witness statements and investigations independently confirmed that no observers had been thrown out and no ballots had been illegally counted, **Dkt.22,¶¶42-45,47-48,52,54,** and numerous hand recounts,

fact checks, and subsequent evidence proved that had *not* been counted multiple times, much less "triple" counted, ***id.*¶¶109–111,115–117,119–120,124–127;** *supra*, at 6-8. As the Complaint alleged, Giuliani knowingly and intentionally ignored this evidence, and all of this evidence—not just Mr. Sterling's statements—provided "obvious reasons to doubt the veracity" of statements, which even Giuliani's cases recognize as sufficient to show reckless disregard for the truth. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *see Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 590 (D.C. Cir. 2016); *Lohrenz v. Donnelly*, 350 F.3d 1272, 1285 (D.C. Cir. 2003).

***Third*,** Giuliani selects another cherry-picked excerpt of a statement on Newsmax by Mr. Sterling attempting to recast some of his statements as one side of an inconclusive "he-said-she-said." **Appellant's.Br.29-30** (citing **Dkt.22,at.¶44).** But this argument ignores what actually made Giuliani's statements defamatory: in this specific example, the false factual allegations that Plaintiffs purposefully excluded observers "under false pretenses," including by constructing a "phony excuse of a water main break," in order to commit election fraud, and that they accused Plaintiffs of using containers to sneak in illegal ballots, whether or not the term "suitcases" was used. ***E.g.*, Dkt.22,at.¶¶4,59,66,80,100.**

***Fourth*,** Giuliani faults the Complaint for noting that Giuliani propagated his lies about Plaintiffs because of a premeditated goal, arguing that the mere fact that

"a publisher was on a mission to advance a preconceived story line . . . does not suffice to show actual malice." **Appellant's.Br.31** (cleaned up). But even if such an allegation would not be sufficient on its own, when such allegations are "also probative of a willingness to publish *unsupported allegations* it is suggestive of actual malice." *Jankovic*, 822 F.3d at 590–91 (cleaned up). The Complaint easily supports the inference that Giuliani was motivated in part by his preconceived narrative about the 2020 election, which in turn made him more than willing to publish unsupported statements about Plaintiffs.

*Fifth*, Giuliani suggests that the District Court erred in rejecting the limited actual-malice argument he *did* make below, claiming that the Strategic Plan's admission that the co-conspirators lacked evidence for their claims amounted to a "self-disclosure of a gap in his knowledge" that rebuts actual malice. **Appellant's.Br.32.** That argument ignores that the two subsequent statements advancing this particular lie—*i.e.* that Ms. Freeman had a criminal history—did *not* disclose this known lack of corroboration. Nor is there any basis to infer that Giuliani meant for the bracketed language in the Strategic Plan to be for external, rather than internal, consumption—the necessary inference in this posture is the opposite; an inference strengthened by the contents of the subsequent statements. **Dkt.22,at.¶¶66,81,84.** This case is thus entirely unlike *McFarlane v. Esquire Magazine*, in which the publisher chose to "pass" along to readers an explanation

40

for why it chose to rely on an admittedly questionable source. 74 F.3d 1296, 1304 (D.C. Cir. 1996).[2]

## C. Giuliani's Challenge to the Allegations of Civil Conspiracy Is Waived and Meritless.

Giuliani contends that the Complaint failed to allege civil conspiracy because it failed to independently allege that his co-conspirators published statements with actual malice. But at the motion-to-dismiss stage, Giuliani contended only that Appellants failed to allege a particularized agreement or specifically name every co-conspirator. **Dkt.26-2.at.13–14;    Dkt.110,at.2,8,10;    Day4AMTr.37:04-06; Dkt.147,at.4.** In light of Giuliani's focus on other aspects of the conspiracy allegations, this un-raised argument was waived, and then expressly abandoned

---

[2] Giuliani argues that the Court "should reverse" if it accepts his actual-malice argument. **Appellant's.Br.32.** For the reasons explained above, that argument is meritless, but even if it were successful the most it could justify would be a partial affirmance and a partial remand: As discussed above, Plaintiffs are undisputedly private figures, *supra*, at 10-11, meaning that demonstrating actual-malice is necessary only "to recover presumed or punitive damages." *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 774 (1986). Thus, this argument is irrelevant to Giuliani's liability, and could have no effect on the compensatory award for IIED because the jury did not *receive a presumed damages instruction* with respect to IIED. **Dkt.137,at.9,10;   Day4AMTr.154:14-155:01.** At most (if successful) this argument could have warranted a new trial on compensatory damages for defamation limited to actual (but not presumed) damages. But the argument has no merit—and in any event, Giuliani does not ask for such a remand in his opening brief, rendering this a moot point. *See, e.g.*, *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996). (the "fail[ure] to present any argument" as to a particular "request for relief in his opening brief" waives the request).

when Giuliani stipulated to liability on all elements of Plaintiffs' civil conspiracy claim, *supra*, at 10—but even if it was merely forfeited, Giuliani does not acknowledge the forfeiture or explain why it should be forgiven.

Regardless, this argument is meritless. Giuliani first invokes Mr. Trump's supposed presidential immunity. **Appellant's.Br.34.** But whatever the merits of that immunity, it is black-letter law that "[i]f two persons would otherwise be liable for a harm, one of them is not relieved from liability by the fact that the other has an absolute privilege to act or an immunity from liability to the person harmed." Restatement (Second) of Torts §880 (1979); *Dennis v. Sparks*, 449 U.S. 24, 27 (1980) (a judge's absolute immunity from a §1983 conspiracy claim did not foreclose the plaintiff from proceeding against private co-conspirators).

Giuliani next contends that the Amended Complaint fails to allege that Mr. Trump and other co-conspirators published their statements with actual malice. But it is unclear what the effect of this argument would be even were it successful. Plaintiffs are undisputed private figures, thus, actual malice is relevant *at most* to the issues of punitive and presumed damages. *Supra*, at 10-11. Here, however, the jury's punitive damages award was based *only* on Giuliani's own conduct, not his co-conspirators', **Day4AMTr.155:15-17**, while the IIED award was based only on actual damages—the jury did not receive a presumed damages instruction. *Supra*, at 41 n.2. At the very most, then, this argument could (if sustained) affect *only* the

portion of the jury's compensatory award for defamation that could plausibly be attributed to the actions of co-conspirators.

But even with respect to those portions of the award, Giuliani's argument could have no effect because, as Plaintiffs alleged below, independent of the conspiracy allegations, Giuliani is fully liable for those particular statements—made by Trump and the Trump Campaign—as ordinary and foreseeable republications of his own defamatory claims. *See Chandler v. Berlin*, 998 F.3d 965, 976 (D.C. Cir. 2021). Here, the admitted allegations in the Complain include that Giuliani "encouraged" Mr. Trump to republish his claims, participated in one of those republications, and otherwise "work[ed] closely with President Trump and his campaign." **Dkt.22,at.¶¶64,77,79,87,88**. Because, accepting those allegations as true, Trump and his campaign's "republication" of Giuliani's statements was "reasonably foreseeable," Giuliani can be "held accountable" for those republications. *Chandler*, 998 F.3d at 976 (cleaned up).

### D.    The Complaint Sufficiently Alleged IIED, and Giuliani's New Arguments to the Contrary Are Waived or Forfeited.

*1.  The Complaint Sufficiently Alleges Actual Malice, and This Argument Is Waived.*

Giuliani contends Plaintiffs-Appellees' IIED claim fails because they failed to establish actual malice, pointing to *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988), and this Court's decision in *Couch v. Verizon Communications, Inc.*,

43

105 F.4th 425, 431–34 (D.C. Cir. 2024). **Appellant's.Br.36.** Like Giuliani's other actual-malice arguments, this argument was waived by virtue of Giuliani's stipulations, and in any event not raised below. It hould not be entertained on appeal. *Supra*, at 23-27. In any event, at most, those cases establish that a plaintiff must establish actual malice in an IIED claim to the same extent as in a defamation claim. As discussed above, because Plaintiffs are concededly private figures, the actual-malice requirement applies only to their entitlement to punitive and presumed damages, and therefore does not apply to *this* IIED judgment. *Supra*, at 41.n.2. And in any event, the complaint adequately alleged actual malice. *Supra*, at 30-41.

### 2. *The Complaint Sufficiently Alleged Extreme and Outrageous Conduct, and This Argument Is Waived or Forfeited.*

Giuliani contends that the Complaint failed to allege "extreme and outrageous" conduct sufficient to sustain an IIED claim—another forfeited argument that this Court should not entertain. **Dkt.26-2;** *supra*, at 23-27.

On the merits, Plaintiffs' burden at the pleading stage was simply to allege facts on which a reasonable jury could conclude that "conduct has been sufficiently extreme and outrageous to result in liability." *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 995 (D.C. Cir. 2014). Giuliani asserts that Plaintiffs' allegations did not suffice because his supposedly "pure speech" cannot qualify as "extreme and outrageous conduct" for purposes of IIED. **Appellant's.Br.37-39.** But the Supreme Court has explicitly held that speech on a matter of public concern may give rise to IIED

liability, so long the defendant published with actual malice, as occurred here. *Supra*, at 32-41; *Hustler Mag., Inc.*, 485 U.S. at 56; *see, e.g.*, *Amobi*, 755 F.3d at 995–96 (withholding material facts from a police officer); *Pitt v. District of Columbia*, 491 F.3d 494, 502 (D.C. Cir. 2007) (false statement in a police affidavit).

In any event, Plaintiffs' IIED claim does not depend on "pure speech," but on a coordinated campaign to target Plaintiffs for harassment and "investigation." *Supra*, at 4-10; *see Nrifewmyer v. Sidwell Friends School*, 128 A.3d 1023, 1042 (D.C. 2015). (holding that publicizing a complaint in order to "trigger an investigation" of a plaintiff "may reasonably be regarded as . . . extreme and outrageous"). The allegations in the Amended Complaint more than live up to those standards. Giuliani "[o]rchestrate[d], coordinate[d], and [i]mplent[ed]" a multi-year, "campaign of malicious lies" about Appellees. **Dkt.22,at.¶¶3-4,9–12,57–101,178– 83.** Moreover, Giuliani sought to—and did—spark an unjustified investigation of Appellees by the government. ***Id.*at.¶¶37–40,47,52–54,79–84,91–92,96.** His coordinated campaign unleashed "an immediate onslaught of violent and racist threats and harassment" and negative media coverage, which continued for years. ***Id.*at.¶¶14,134–62.** And his campaign "had its intended effect," causing Appellees

severe emotional distress and physical manifestations of that harm. *Id.* **at.¶183;** *see*

*id.* **at.¶¶134–62,184–86.**[3]

## III. There Is No "Heightened Foreseeability" Requirement Here, and Giuliani's Novel Argument to the Contrary Is Waived.

Giuliani argues that the jury's compensatory damages award "cannot stand"

because "Plaintiffs did not adequately allege, or sufficiently prove, that Defendants'

---

[3] In addition to all the other problems with Giuliani's attacks on the Complaint's allegations, remand for any of those reasons would be futile. It is now uncontested that Giuliani committed intentional discovery violations that caused the loss of evidence "relevant to all of [P]laintiffs' claims," and "significantly prejudiced [P]laintiffs' abilities to prove their claims." **Dkt.94,at.35,38.** The premise of Giuliani's challenges to the Complaint's allegations is that because those willful discovery violations incurred the most severe sanction—a default judgment— Giuliani is now entitled to limit Plaintiffs to the allegations in their Complaint, denying them the benefit of any additional facts—including facts that are now known *and* facts that can never be known because of Giuliani's own discovery misconduct. But on remand, the same unchallenged findings of discovery misconduct would compel the District Court to enter lesser sanctions leading to the same result under Fed. R. Civ. P. 37(b)(2)(A)(i) and (ii), which authorize the trial court to "direct[] that the matters embraced in the [disobeyed discovery] order or other designated facts be taken as established for purposes of the action," and "prohibit[] the disobedient party from supporting or opposing designated claims or defenses." These rules "ensure that a party will not be able to profit from its own failure to comply with the rules set forth by the court." *Butera v. District of Columbia*, 235 F.3d 637, 661 (D.C. Cir. 2001) (cleaned up) (citing *Dellums v. Powell*, 566 F.2d 231, 235 (D.C. Cir. 1977)). By not contesting any of the District Court's factual findings relating to its sanctions order, Giuliani has not only conceded that the default judgment sanction was appropriate, he has also necessarily conceded that lesser-included Rule 37(b)(2)(A)(i) or (ii) sanctions establishing each specific element of liability against him would have been appropriate, too. Any remand would begin and promptly end with that undisputed reality—and would therefore be a futile exercise, only rewarding Giuliani's misconduct with further delay.

[sic] publications proximately caused Plaintiffs' injuries." **Appellant's.Br.39.** But Giuliani's sole argument going to proximate cause is that because (some of) Plaintiffs' damages resulted from the intervening criminal acts of third parties, the District Court should have applied a "heightened foreseeability" requirement under the D.C. Court of Appeal's decision in *Freyberg v. DCO 2400 14th Street, LLC*, 304 A.3d 971 (D.C. 2023). Appellant's.Br.41-42. Giuliani did not raise that argument below, and given the attention Giuliani paid to other, unrelated proximate-cause issues at various stages below, **Dkt.119,at.6**, his failure to do so constitutes full-blown waiver; at a minimum, it is forfeited and lacks any accompanying explanation for why that forfeiture would be overlooked.

Regardless, this argument is wrong, as is evident from *Freyberg* itself. Under the rule recognized in *Freyberg*, a plaintiff must allege a heightened degree of foreseeability with respect to intervening criminal acts in order to establish proximate causation in a *negligence* action based on a failure to protect. 304 A.3d at 977. But as *Freyberg* itself holds, it is "not at all clear" that this rule applies outside the context of a "pure failure-to-protect case." *Id.* at 978. *Freyberg* ultimately held that, even in the failure-to-protect context, the "heightened foreseeability" rule does *not* apply where the failure-to-protect is premised on an affirmative act rather than a mere omission. *Id.* at 978-79. By the same logic, it has even less application to an *intentional* tort case like this one, premised not on a "pure failure" to act but an

47

intentional decision to harm—and Giuliani cites nothing to suggest otherwise. Under *Freyberg*, there is no such "heightened foreseeability" context in the intentional-tort context, and this Court should not identify one as a matter of first impression, because "a court of appeals cannot correct an error under plain error review unless the error is clear under current law." *Salazar ex rel. Salazar v. District of Columbia*, 602 F.3d 431, 437 (D.C. Cir. 2010) (cleaned up).

Giuliani's only other argument is that the trial evidence was insufficient to sustain the compensatory damages verdict under this inapplicable "heightened foreseeability" rule, which fails on the merits for the same reasons. **Appellant's.Br.42-43.** And Giuliani did not raise *any* sufficiency-of-the-evidence challenge in his Rule 50(a) or Rule 50(b) motion, including this one, placing it beyond this Court's power to decide. *Supra*, at 24.

In any event, as the District Court observed, Giuliani's counsel freely developed this theory of intervening causation on cross-examination, and in closing arguments. **Dkt.159,at.37-38.** The jury was instructed with the proper legal standard, applied it to the evidence and argument they heard, and arrived at the compensatory award. There is no basis to overturn that award, especially given the applicable standard of review, which Giuliani does not attempt to satisfy. *See Xereas v. Heiss*, 987 F.3d 1124, 1135 (D.C. Cir. 2021) (cleaned up).

Finally, any error would be harmless because, as was undisputed below, this was a defamation *per se* case in which the jury was entitled to presume damages without proof of harm. **Dkt.115,at.21-22.**

## IV. The Court's Jury Instructions Regarding "Matters Already Decided" Were Appropriate, Jointly Agreed to, and Harmless.

Giuliani asserts that the Court violated Federal Rule of Evidence 605 when it explained why the liability phase of the trial had been cut short—*i.e.*, by Giuliani's willful discovery misconduct. **Appellant's.Br.50-62.** Although an appellant need not have raised a Rule 605 objection below in order to preserve it for appeal, in this case, Giuliani *agreed* to the challenged instruction, which independently bars this argument under the invited-error doctrine. *United States v. Benton*, 98 F.4th 1119, 1131 (D.C. Cir. 2024) (the defendant's "joint proposal of the [challenged] instruction and his approval thereof constitute invited error"). **Dkt.116; Dec.5.Tr.38:9-12.** Furthermore, the parties separately and expressly *stipulated* that the "undisputed fact[]" that the Court "sanctioned Defendant Giuliani for misconduct relating to his failure to comply with the Court's Orders and his discovery obligations in this case," "can be referenced during trial and read into the record by the Court," and that the parties "may reference and/or publish to the jury all of the previous findings and adverse inferences entered by the Court." **Dkt.115,at.19,21.**

In any event, the challenged instructions did not violate Rule 605 by informing the jury that certain matters had been decided and should not be reconsidered.

**Day4AMTr.138:15-21.** Rule 605 provides only that the "judge may not testify as a witness at the trial," Fed. R. Evid. 605, a rule that is violated only where the judge's statement is "the functional equivalent of witness testimony." 27 Wright & Miller, Federal Practice & Procedure §6063 (2d ed.). By contrast, statements that are "essential to the exercise of some judicial function" cannot violate the Rule. *Id.* Indeed, if Giuliani's argument were correct, no court could enter an adverse-inference instruction without violating Rule 605, or exercise its express authority under Rule 37(c) to "*inform the jury of [a] party's failure*" to comply with discovery obligations—two obviously essential judicial functions whose existence betrays the conceptual error in Giuliani's argument. Fed. R. Civ. P. 37(c)(1)(B) (emphasis added).

Further, any error here would be harmless because the Court *did* impose adverse inferences in this case, which Giuliani has not challenged on appeal. Giuliani now complains that the "matters already decided" instruction violated Rule 605 because the jury "learned . . . solely from the court, not from any witness or exhibit," about the Court's finding that he "willfully refused to comply with his discovery obligations." **Appellant's.Br.53.** But the jury would have—*and did*—learn *exactly* the same thing from the unchallenged adverse-inference instructions, pursuant to which the jury was required to assume that "Giuliani was intentionally trying to hide

evidence . . . for the purpose of artificially deflating his net worth." **Day4AMTr.147:21-148:14.**

Giuliani's arguments against harmlessness are not persuasive. ***Id.*at.54-56.** In particular, Giuliani's analogy to cases excluding the factual basis for the admission of evidence, *id.***at.55-56**, is inapposite. In those cases, the point is that "the evidentiary standard" for admission of evidence—preponderance of the evidence—"is unrelated to the burden of proof on the substantive issues," and a question for the court rather than the jury. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). That is nothing like the challenged instruction here, which summarized prior judicial findings that the jury was *required to accept* as part of its factfinding task.

Finally, this Court should also reject as waived and meritless Giuliani's argument that the additional "cumulative effect" of a grab-bag of asserted errors warrants reversal. Giuliani spends four pages objecting to the playing of Jenna Ellis's deposition designations to the jury, **Appellant's.Br.56-60**, but Giuliani *expressly waived* any objection to Plaintiffs' deposition designations, including the designations of Ms. Ellis's testimony. **Dkt.116.** Likewise, it was not "plain error" for the Court to omit an un-asked-for instruction on the criminal-law rule against inferences from a witness's invocation of the Fifth Amendment in a civil case, or to deliver an appropriate instruction on the correct standard for *civil* cases. **Appellant's.Br.60**. Nor did the Court err by admitting testimony that Giuliani did

51

not object to, or by delivering jury instructions that Giuliani jointly proposed without objection. **Appellant's.Br.61-62;** *supra*, at 49. These were not errors individually or cumulatively, and *certainly* were not so prejudicial as to "deprive [Giuliani] of a *fair trial*." *United States v. Celis*, 608 F.3d 818, 847 (D.C. Cir. 2010) (emphasis added)..

## V.    The District Court Correctly Held that Plaintiffs Were Entitled to Seek Punitive Damages.

Giuliani asserts that the District Court erred in permitting Plaintiffs to seek punitive damages and in permitting the jury's punitive damages award to stand. **Appellant's.Br.43-50.** Giuliani never raised this argument below—indeed, he invited the result he now complains of by specifically requesting a modification to the jury instructions—and, moreover, this argument is clearly wrong.

At no time throughout the district court proceedings did Giuliani contest that Plaintiffs had a right to seek punitive damages before the jury. Indeed, he expressly stipulated and conceded that the Complaint established his "liability as to Plaintiffs' claim for punitive damages." **Dkt.90,at.2.** Giuliani's only argument below—which the District Court accepted—was that, although the jury was authorized to award punitive damages, it could determine *based on the evidence* that the appropriate award was zero. **Dkt.105-5,at.19,26.** The Court agreed and instructed the jury accordingly. **Day4AMTr.155:2-7** ("Your job is to decide the amount of *any* punitive damages award.") (emphasis added). Giuliani's requests for jury instructions invited the purported error he now complains of, and at *best* constitute a conscious waiver

of a known right to challenge Plaintiffs' right to seek punitive damages at trial. *Supra*, at 23-24.

In any event, these arguments are meritless. Giuliani asserts that "common-law" malice was not established below, and that this must have equated to "animus—spite, or ill-will, etc.—toward Plaintiffs." **Appellant's.Br.45.** Even if that were the standard, Plaintiffs alleged that Giuliani *did* act with such malice, including that he "specifically intended to cause [Plaintiffs] harm" and that his "character assassination" of Plaintiffs was "deliberate"—allegations deemed admitted by his default. **Dkt.22,at¶¶9,175,182.** In any event, Giuliani misleadingly truncates the standard for common-law malice, editing it down to "spite, ill will" or "animus" even though it is established by his own case citations that "[u]nder District of Columbia law," punitive damages are available when a tort is "accompanied with fraud, ill will, *recklessness*, *wantonness*, *oppressiveness*, *wilful disregard of the plaintiff's right*, *or other circumstances tending to aggravate the injury*." *Pitt*, 491 F.3d at 507–08 (emphasis added). That standard does *not* require Giuliani to have personally known of—or borne ill will towards—Plaintiffs before he launched a campaign to brand them as criminals.

## VI.    The Damages Awards Were Lawful, Proportionate, and Amply Supported by the Evidence.

### A. Giuliani's Challenges to the Damages Awards Are Barred by His Failure to Present them to the District Court.

As Giuliani acknowledges, his challenges to the size of the jury's verdict were not raised below, including in the postverdict motions that would have been necessary to raise them on appeal. **Appellant's.Br.63.** Indeed, where—as here—the *entire trial* was focused on the quantification of damages, and Giuliani had *months* rather than days in which to file his post-judgment motions, his failure to mount any challenge to the size of the verdict is particularly inexcusable.

There is no basis to review these arguments for the first time on appeal. This Court has long held that with respect to the amount of damages awards, the district judge "must be given an opportunity to exercise [her] discretion. For this reason, a motion for a new trial must be made to the trial court" if the appellant wishes to attack a damages award. *Ryen v. Owens*, 446 F.2d 1333, 1334 (D.C. Cir. 1971). Where an appellant fails to seek a new trial on the grounds of an excessive damages award, the trial court is deprived of "the opportunity to pass on the claim," and "[a]s a consequence," the appellant "cannot challenge on appeal the adequacy of the damages awarded." *Id.* at 1335; *see Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 218 (1947) (a litigant may not "present [a] question initially to the appellate court when the primary discretionary responsibility for its decision rests on the District

54

Court"); 12 Moore's Federal Practice - Civil §59.55 (2024). "A postverdict motion is necessary because determining 'whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart.'" *Unitherm*, 546 U.S. at 395 (quoting *Cone*, 330 U.S. at 216).

Ignoring these principles, Giuliani relies on this Court's vacated opinion in *Owens v. Republic of Sudan*, 864 F.3d 751, 813 (D.C. Cir. 2017). **Appellant's.Br.63.** According to Giuliani, *Owens* "call[s] for 'a similarly exacting standard for review of an untimely challenge to an award'" as would apply to a timely challenge to a punitive damages award. *Id.* (quoting *Owens*, 864 F.3d at 813). But *Owens* is plainly inapposite to the extent it is precedential at all: there, the appellant *had* raised its challenge in the district court, albeit belatedly, after failing to appear to defend—this Court thus had a "properly developed record on appeal and a reasoned opinion on the merits" to review. 864 F.3d at 813 n.8. *Id.*at 812-13. And *Owens* further relied on concerns about foreign relations and judicial administration not at issue here. *Id.* at 813.

Next, Giuliani asserts that *Owens* supports review of his unpreserved challenges to the damages awards because (he says) they present "novel question[s] of constitutional law." **Appellant's.Br.63.** But *Owens* identified that factor as an

55

"exceptional circumstance" under Rule 60(b)(6)—it emphatically did *not* carve out an exception from ordinary rules of forfeiture and waiver where a novel constitutional question is raised for the first time on appeal. 864 F.3d at 813. There is no such exception. *Keepseagle*, 856 F.3d at 1054.

Next, recognizing that (even under his argument) there is no basis to review the compensatory award, Giuliani asks that this Court consider it as "an issue antecedent to" the "[damages] dispute." **Appellant's.Br.64** (quoting *Lesesne v. Doe*, 712 F.3d 584, 588 (D.C. Cir. 2013)) (interpolation in Appellant's brief). But contrary to Giuliani's contention, if this Court were to review the purported "excessiveness" of the compensatory award, that would not "avoid" the need to consider Giuliani's unpreserved "constitutional" objection to the punitive damages award, **Appellant's.Br.64**—by Giuliani's own logic, it would only *worsen* the proportional relationship between the compensatory and punitive awards. Giuliani cannot bootstrap his unpreserved arguments about the size of the compensatory award to other unpreserved arguments about the constitutionality of the punitive damages award.

Finally, Giuliani is wrong that "these issues present pure questions of law." **Appellant's.Br.64** (cleaned up)**.** While constitutional review of punitive damages is searching enough to be effectively *de novo*, that is the *only* damages challenge that even comes close to a "pure question[] of law." *Id.* All of Giuliani's remaining

56

remittitur arguments would require a factbound exercise of discretion that the District Court should have been asked to perform.

### B.    The Compensatory Damages Were Not Excessive.

Even if the Court were to entertain Giuliani's challenge to the "excessiveness" of the compensatory award, there is nothing to it. Giuliani repeats his argument that the District Court inflamed the jury's passions by reading jury instructions that recited earlier events in the case, **Appellant's.Br.64–65,** but that argument is meritless for the reasons discussed above, *supra*, at 49-51. The remainder of Giuliani's argument is that the compensatory damages award was especially large, but Giuliani ignores that the unusual size of the jury's verdict was the result of the unusual nature of his own conduct and the harm it caused. Indeed, Giuliani does not attempt to explain how the jury's verdict was "beyond all reason" or "so great as to shock the conscience" in light of the evidence presented at trial, **Appellant's.Br.64**, much less how this Court could analyze those issues in the absence of a motion made to the trial court, which heard all the evidence. In fact, Giuliani does not even *mention* the evidence presented at trial. Given the heavy burden Giuliani would have to satisfy to convince this Court to "second-guess the jury," there is *no* basis to do so here, where Giuliani has not even bothered to engage with the factual record. *Langevine v. District of Columbia*, 106 F.3d 1018, 1024–25 (D.C. Cir. 1997).

In any event, the trial evidence amply supported the jury's compensatory award. The District Court noted that Plaintiffs' IIED damages were "'hardly surprising or unexpected in light of the abuse [they] suffered' as a result of Giuliani and his co-conspirators' defamatory statements." **Dkt.159,at.35-36**. And the District Court noted "the obvious fact that the jury's unanimous awards were *conservative* as to the plaintiffs' requested compensation for reputational harm due to Giuliani's defamation *per se*, based on the expert's calculation of the cost of repairing their reputations." **Dkt.159,at.12** (first emphasis added). Plaintiffs' expert testified that the upper range of her reputation-repair estimate was $*47.4* million in compensatory damages for defamation alone. **Day3AMTr.137:23-138:04.** While Giuliani cross-examined that expert, he declined to introduce his own expert witness, depose Plaintiff's expert, or put on his own case. It simply cannot be said, under such circumstances, that the jury's verdict was unsupported by record evidence. Furthermore, as Giuliani does not dispute, Giuliani was held liable below for defamation *per se*, meaning that the jury was entitled to award presumed damages. **Dkt.138,at.2**; **Dkt.144,at.11.**

## C. The Punitive Damages Award Was Lawful, Proportionate, and Supported By the Evidence.

Giuliani raises three challenges to the award of punitive damages—none preserved below, and all waived, forfeited, or beyond this Court's power to reach.

*1.  Giuliani's "Common-Law" Excessiveness Argument Is Meritless*

Giuliani argues that the punitive award was excessive under *Breeden* because it led to Giuliani's bankruptcy. **Appellant's.Br.65.** That argument is waived, but also meritless. First, Giuliani again ignores the deterrence-based purposes of punitive damages expressly contemplated by *Breeden*. But even as to the interest in punishment, Giuliani's appeal to his own bankruptcy filing is unavailing. As *Breeden* explains, this limitation on a punitive award requires a plaintiff "to present sufficient proof of current net worth to support the punitive damages awarded by the jury." *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 941 (D.C. 1995). But here, the District Court found, and required the jury to assume, that Giuliani *intentionally concealed* such evidence from Plaintiffs in discovery and destroyed their ability to present such evidence. *Supra*, at 12-15. Having decided not to challenge that sanction on appeal, Giuliani cannot now argue that the jury should have considered evidence that this unchallenged adverse inference required them to disregard.

Similarly, Giuliani's argument that the Court may "infer passion, prejudice, or partiality from the size of the award" is without merit. **Appellant's.Br.66** (quoting *Honda Motor Co. v. Oberg*, 512 U.S. 415, 425 (1994)). *Honda* held only that it would constitute a denial of due process for a judicial system to withhold *some* type of review of jury awards. 512 U.S. at 432. But it did not specify what standard, if any, the Constitution requires, much less sanction the procedure Giuliani invokes,

*id.* at 432 n.10, and (in any event) did not hold that a litigant is entitled to such review *even if he does not ask for it*—as was the case here.

> 2. *Giuliani's "Legitimate State Interest" Argument Is Meritless.*

Giuliani argues for the first time on appeal that this Court should "reverse" the punitive damages award because even assuming "Defendant's conduct in D.C. inflicted injury on Plaintiffs," "D.C. cannot punish Defendant for tortious conduct in Georgia." **Appellant's.Br.67-68.** But while *State Farm* holds that a state may not punish conduct that had no impact *on the state* or its residents and is therefore "outside of the State's jurisdiction," that is not the case with the conduct at issues here. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003). Indeed, it is undisputed in this case that Giuliani's conduct *did* have an impact on D.C., and that there exist the necessary case-related contacts with the District to trigger its interest in punishment and deterrence of his conduct: Giuliani has admitted that personal jurisdiction and venue are proper in D.C., including because he "engaged in a persistent course of conduct in the District relating to the statements at issue" and even made some of the statements themselves *from D.C.* **Dkt.22,at¶21,23-26;** *see* **Dkt.13,at.¶¶31-32; Dkt.26-2; Dkt.33,at.¶¶23-24.** Similarly, any objection to the application of D.C. law is waived, not to mention barred by the invited-error doctrine: the only time Giuliani mentioned choice-of-law in the District Court, it was to tell the Court that it did not "need[] to engage in a conflict of laws analysis."

**Dkt.26-2,at.8,.n.2.** He never brought it up again, waiving the issue. *See Perry Cap.*

*LLC v. Mnuchin*, 864 F.3d 591, 626 n.24 (D.C. Cir. 2017).

Giuliani's cases actually confirm that D.C. maintains a legitimate interest in punishing his conduct, not to mention deterring similar conduct. *State Farm*, 538 U.S. at 416 (a state has a legitimate interest in imposing punitive damages to achieve "deterrence and retribution"). *Gore*, *State Farm*, and their progeny cover the situation where punitive damages are assessed against a defendant for conduct involving absent parties and occurring outside the jurisdiction of the trial court. 538 U.S. at 421-22; *id.* at 422 (explaining that even lawful conduct may be considered "when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious," and has "a nexus to the specific harm suffered by the plaintiff."). Here, Giuliani was undisputedly *within* the District Court's jurisdiction and the punitive damages were awarded only for the tortious conduct that was the very subject of Plaintiffs' claims. Because the punitive damages award here did not depend on unrelated conduct, much less non-tortious conduct, these cases are simply not implicated.

    *3.* *Giuliani's Gore Arguments Are Waived and Meritless.*

Giuliani turns next to the *Gore* "guideposts," another argument not raised below and beyond this Court's power to reach in the absence of a postverdict motion raising the argument. **Appellant's.Br.68-72;** *Supra*, at 24. As to the first and "most

important" factor, the degree of reprehensibility of his conduct, Giuliani boldly asserts that his "conduct was not at all reprehensible." **Appellant's.Br.69.** But the factors that the Supreme Court has listed in evaluating that factor point in the other direction. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 576–77 (1996) ("trickery and deceit," "indifference to or reckless disregard for the health and safety of others," "infliction of economic injury, especially when done intentionally through affirmative acts of misconduct, or when the target is financially vulnerable," "evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful" (internal citations omitted)). And the jury may reasonably have concluded that this *is* a special case, in which Giuliani's insistence on propagating lies about Plaintiffs, up to and including the first day of trial, *supra*, at 16-17, constituted especially reprehensible conduct warranting significant punishment and deterrence.

Giuliani also cites *Snyder v. Phelps* for the proposition that this case is special because it involves speech. **Appellant's.Br.69-70.** But *Snyder* turned on the Supreme Court's conclusion that the speech at issue *was* protected by the First Amendment, creating a concern that the jury would not be "neutral" with respect to that speech in imposing punitive damages. 562 U.S. 443, 457–58 (2011). But that is not this case, because false and defamatory speech published with actual malice is not protected at all, let alone entitled to special protection. *See Hustler Mag.*, 485

U.S. at 56. Here, the underlying conduct is unprotected by the First Amendment. *Supra*, at 30-40. And of course, outside of the *Snyder* framework, a jury is not required to be "neutral" with respect to unprotected conduct—to the contrary, a punitive damages award is *supposed to* reflect a jury's assessment of the degree of reprehensibility of the defendant's conduct.

As for the second *Gore* guidepost, the jury awarded a punitive damages award roughly equal to compensatory damages—*i.e.*, 1:1. (Giuliani bizarrely calculates the ratio as 4:1, apparently imagining that the punitive award can be counted in its entirety four separate times in order to measure each subcomponent of the compensatory award.) **Appellant's.Br.70-71.** But as Giuliani's own cases confirm, a 1:1 ratio is entirely appropriate. For the same reason, Giuliani's complaint that the parties' jointly-proposed jury instruction on punitive damage ratios "effectively told the jury to return a verdict at a 4:1 ratio" has no merit (even were it not waived)— the jury returned a 1:1 punitive damages award, which Giuliani appears to concede is appropriate. ***Id.*; Dkt.144,at.2-3.**

Finally, Giuliani argues that the civil or criminal penalties for purportedly similar conduct favor a smaller punitive damages award. **Appellant's.Br.71-72.** But the special features of this case—a relentless campaign of lies targeting two previously unknown civil servants for personal gain, reaching an unprecedented audience—has no analogue in the examples Giuliani cites. In *Gordon v. Rice*,

moreover, the D.C. Court of Appeals gave weight to this factor amidst others weighing against the award: the trial court had found that the conduct was "on the low end of the reprehensibility scale," and the punitive damages award under review bore a *99:1* ratio to the compensatory award. 261 A.3d 224, 226, 228 (D.C. 2021). Under the circumstances here, there is no basis to reduce the *1:1* punitive damages award for Giuliani's uniquely reprehensible conduct.

## CONCLUSION

The judgment should be affirmed.

Respectfully submitted.

/s/ Michael J. Gottlieb

| | |
|---|---|
| John Langford | Michael J. Gottlieb |
| Rachel Goodman | Meryl Conant Governski |
| UNITED TO PROTECT DEMOCRACY | WILLKIE FARR & GALLAGHER LLP |
| 82 Nassau Street | 1875 K Street NW |
| New York, NY 10038 | Washington, DC 20006 |
| (202) 579-4582 | (202) 303-1000 |
| rachel.goodman@protectdemocracy.org | mgottlieb@willkie.com |
| | mgovernski@willkie.com |
| Von DuBose | |
| DUBOSE MILLER LLC | Aaron E. Nathan |
| 75 14th Street NE. Suite 2110 | M. Annie Houghton-Larsen |
| Atlanta, GA 30309 | WILLKIE FARR & GALLAGHER LLP |
| (404) 720-8111 | 787 Seventh Avenue |
| dubose@dubosemiller.com | New York, NY 10019 |
| | (212) 728-8000 |
| | anathan@willkie.com |
| | mhoughton-larsen@willkie.com |

DECEMBER 16, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), and this Court's September 24, 2024 Order enlarging the word limits applicable to the briefs in this case, I certify that this brief was prepared in double-spaced, 14-point Times New Roman font, and contains 14,955 words, as determined by the word-count function of Microsoft Word.

/s/ Michael J. Gottlieb

December 16, 2024